Smith v. Nationwide at all. Mr. Richard Dramling. Chief Judge Carnes, Associate Judges, may it please the court. My name is Richard Riley. I represent Donna Smith, the appellant and the plaintiff in this action. This is an Alabama law, an Alabama common law action, an Alabama tort law action. We have abusive process and conspiracy claims against State Farm, the UIN carrier in this case, and negligence and wantonness and conspiracy claims against Nationwide, the liability insurer in this case, and Donna Smith's liability insurer. Your Honor, the facts of this case cry out for a tort remedy. We have a situation that has never been addressed by the Alabama Supreme Court, but it fits the structure of a tort claim. We have wrongful conduct. We have damages. The biggest defense that both defendants present in this case is that nobody has a previous case on point, and it's just simply not required under the tort law, especially the common law. The common law is supposed to be flexible, to meet all circumstances. The Alabama Supreme Court has said long ago, for every wrong, there is a remedy, and for every injustice, an adequate and salutary relief. Your Honor, the basis of the description . . . Foster and Keaton in describing the common law or the law of most states said, there's no liability where the defendant has done nothing other than carry for abusive process. Carry out the process to its authorized conclusion, even though with bad intentions. We're talking about State Farm at this point, and I assume we're discussing the Haygood case in the letter briefs. Point being . . . What I'm actually discussing is their statement of tort law, common law of tort law. There is no abusive process. After the process is filed or begun, to just carry it to its conclusion. Yes, Your Honor. The point being here is that State Farm did nothing to carry this to its conclusion. It did nothing to pursue subrogation against Donna Smith. That's the whole purpose of doing a Lambert fronting procedure under Alabama law. Then it didn't abuse the process. It didn't do anything, Your Honor. Well, but you can't abuse the process by not doing anything to the process. Well, Your Honor, the point is . . . in a different way. That's not necessarily abuse of the process, as I understand the tort. Am I missing something? Well, Your Honor, any litigant that files a claim has got a duty to, as you said, follow through with the claim to do something . . . No. That's not what Prosser and Keaton, describing the general law, says. There's no liability when all they do is follow through with the process. I would agree with that, but State Farm . . . They didn't say there is liability if they don't pursue the process to its conclusion. I think that's a dangerous construction of Prosser and Keaton, Your Honor. Well, that's exactly what they say. There's no liability where the defendant's done nothing other than carry out the process to its authorized conclusion. No liability there. They don't say . . . and you have no support that I have read in your brief. You don't say there is liability if they don't carry out the process. With respect, Prosser and Keaton give some examples of what they meant by that. They gave two examples. They gave one situation where somebody issues a writ of execution, but then doesn't do anything to actually execute, but uses it for an alternative purpose. But isn't this different? In this case, isn't what the process is here is to preserve the right to pursue subrogation, to preserve that right, as opposed to start the subrogation process? Isn't what the Supreme Court of Alabama said that the purpose of this procedure that has to preserve its option to pursue subrogation? No, Your Honor. The Alabama Supreme Court has said in the Allstate case and the Geico case that it actually institutes the action. It is tantamount to a compulsory counterclaim. It begins the action. At the beginning of these cases . . . and they're not under the pressure of a 30-day deadline to . . . So your position is, just to make sure I understand, if an insurance company goes through this process, then it must file a subrogation claim. That's your position. The Alabama Supreme Court has said that the act of fronting is the filing of the claim. It complies with the statute of limitations, and that that is actually the institution of the action. What I'm saying, though, is it's your position that they must pursue it to the end. Why else would they do it, Your Honor? If that's the purpose for it, is to pursue and collect on subrogation? Because it could be the purpose is to preserve the option to do so. To pay $25,000 just to preserve an option? Your Honor, there's no deadline for . . . Sure. Absolutely. Insurance companies would do that if they thought they had some liability on the UMI. But the point that I'm getting, Judge Carnes, if I may, they're not under a deadline to front. The Alabama Supreme Court has not given a rigid timeline for when these things occur. Any insurance company that pursues subrogation in any context gets a credit report, does their research, finds out if there's actually something there to collect before filing an action. Every lawyer in every civil case has to have a Rule 11 basis before doing anything. And if you read the Alabama Supreme Court's, especially the recent opinions, what they're saying is, is not, hey, if you want to do this, you check this box. What they're saying is, and the whole point of Lambert, if you go back to the beginning, is what we don't want to happen is, is have a lawsuit at the very beginning where the UIM insurer is not involved. And then have to come back and do this again later and re-litigate the same issues. And so, Well, it wouldn't necessarily re-litigate the issue because if the insured releases the other party and vice versa, mutual releases, that cuts out the subrogation, does it not? Arguably. I think there are other methods that the Supreme Court could have chosen to deal with this, you know, 40 years ago, quite frankly. But, Your Honor, that's beside the point. Lambert is what it is. The point is, is that Lambert is not, it does not preempt the tort law. It's a general guideline of how things are supposed to ebb and flow. And anytime anybody exercises a right, they have to do it reasonably and they have to do it in a way that does not cause abuse. And in this situation, if the reason for the fronting process is to preserve, protect, pursue whatever, subrogation, that has to be the purpose. In this case, our point is State Farm never had an intent to subrogate, never was going to subrogate, and they don't ever subrogate. And as a matter of fact, Then why did they do this? They did it for several reasons. Number one, to step on the neck of their insured, the vassals. They just decided to harm their insured. That's one of the reasons. No, I mean, I'm sorry. Insurance companies are in it for the money. I know that's shocking, but they are. So stepping on the neck of their insured gets the money? Well, I apologize. That was a crass way for me to get my point across, Your Honor. But the point is simply this, when there's no liability, there's seven figures in damages and they don't have to provide a defense. But wouldn't the cause of action then be for the uninsured motorist and not for the, I mean, for the client as opposed to your client? Wouldn't that be the cause of action? Certainly, and they did pursue a cause of action and it's pending. But my client But why does your client have a cause of action? My client has a cause of action because she did everything that she could do and was safe. She presented a release. She was safe. And if the purpose for subrogation is to protect that $100,000 interest, it makes absolutely no sense, Your Honor, for State Farm to be able to cause my client seven figures in harm. Well, your client caused the seven figures in harm. Arguably, but also my client was also protected by the liability insurance that she purchased. Okay. Now, help me as to how it steps on the neck of the bosses because the bosses come out in reality here with, don't they, $125,000 from the insurance and potentially an excess claim. It seemed to me they came out as well as they possibly could. They came out a lot better than if they had just settled for the $25,000. If you look strictly at the numbers, Your Honor, but in the reality they had to wait several years where their brain damaged child had to wait for this money. You said, but this money, they got the $25,000 immediately, which is the same that they would have gotten from the release. Am I understanding it right? May I briefly answer that? Yeah, sure. As far as I'm concerned. But what they had to wait on was the $100,000. That's the point. The $100,000 was due and payable. Most insurers would pay it. It is the duty that State Farm had to the bosses to pay it unless they had a basis to believe there was no liability and they couldn't prove the damages. They had to wait years. You mentioned pending litigation. Tell us the details of that. Your Honor, I'm not fully informed. Both cases were filed at about the same time. They were consolidated for the purpose of arguing the motion was dismissed before Judge Cornelius. It's my understanding, although I haven't really reviewed that in a while, that that case is pending through discovery. I believe that Mr. Fawal and Mr. Barclay are representing State Farm in that action and they're here as well, so they may be able to answer that. Who sued whom or what? In the other action, the bosses sued State Farm under various torts, bad faith, breach of contract, fraud. Some of those counts were allowed to go forward and some were not by Judge Cornelius. I believe the bad faith claims were allowed to go forth. That's the remedy that ought to be if there is a remedy, right? State Farm was the insurer of the bosses. State Farm didn't do something or didn't do it fast enough, so the bosses are suing State Farm. Correct. My client is Donna Smith who has an excess judgment. I understand you're not in that, but it looks to me like the breach, if any, was too vast by State Farm. I know the original allegations. I don't understand what Nationwide's supposed to have done. We've briefed that, Your Honor. I know, but it doesn't make sense to me. Nationwide said, here's $25,000. Your Honor, the Alabama cases say that an insurer has to act like a reasonably prudent insurer under the circumstances. We've listed the cases. It's not that they just have to tender the money. The point being here is when we have this excess situation, it is very, very foreseeable that this is going to happen to Donna Smith. Therefore, Nationwide is supposed to do what? Go to the bosses and say, we will settle for $25,000, which is policy limits. Also, we want you to agree to not collect from our client more than $100,000, which is the maximum subrogation. Then State Farm says, if you do that to the bosses, we're not going to pay that. It doesn't matter at that point. At that point, my client is protected. My client is protected from this excess situation. You seem to be arguing that everybody had almost a fiduciary obligation to your client. Nationwide did, Your Honor. But the rest of them don't, and I don't. My client has a duty. We have a tort in Alabama, interference with business relations. That is such a stretch. I disagree, Your Honor. Unfortunately for you, you don't have a vote, and I may get outvoted, and I admire you for your aggressiveness with this on behalf of your client. That's what zealous representation means, but I just want to tell you, it sounds like a real stretch to me. That's not a question, but thank you, and we'll give you a full five on reply. Mr. Fuall. Thank you, Your Honor. David Fuall for one of the appellees, State Farm. Your Honor, I think, as I hear the court's questioning, I do want to focus on a couple things that were said. As an initial matter, of course, the dismissal of State Farm was proper by the district court for some of the reasons and some of the questions I'm hearing. Number one, abuse of process just fails as a matter of law under Professor Keeton, but certainly under the Alabama Pattern Jury instructions and the arguments that were made. The Lambert procedure of fronting, which the Alabama Supreme Court set up back in 1991, is simply not the type of judicial process to support an abuse of process. I will take issue ... My able colleague, Mr. Riley, said to the court that the Lambert procedure is set up to create for the requirement that they actually pursue sub. With all due respect, that is not what Lambert says, and that's not what the Alabama Supreme Court has ever said. In fact, if you read Lambert, and then if you read the ex parte Allstate opinion from 2017, it makes clear that the purpose of fronting can be, and I will quote, they said, an insurer's compliance in Lambert can be done, and I'm quoting from the Allstate opinion from 2017, fairly recent, to have their liability to pay UIM benefits, if any, determined by a jury whose verdict would not be influenced by evidence of insurance coverage. That is the very thing Ms. Smith is alleging is State Farm's improper motive here, that oh, they never intend to pursue sub, instead they want it ... In fact, in the oral argument before the district court, counsel stood up and told the district court that, oh, what State Farm really wants is individual versus individual, as if that were improper, but the Supreme Court has blessed that and said that is a proper basis to front under Lambert, and lo, in 1988, the Supreme Court said to protect the trial from the corrupting influence of insurance. Your honors, I submit ... That is that without Lambert, this verdict might have been several million, not 760,000. Is that the implication? I mean, I didn't mean in specific, but in generality, is that the sort of evil aimed at because if they knew about the insurance ... Yes, your honor. That's exactly it, Judge Boggs, and that's exactly what the Alabama Supreme Court, going all the way back to 1988, in lo, and carried forward to ex parte Allstate in 2017, has said is a permissible purpose for the insurance company to not want to be a part of that tort claim of the injured, insured, Mr. Voss here, against the tortfeasor, Ms. Smith, who is of course the appellant in this case. I submit to you, herein lies the crux of Ms. Smith's claims. They're all based on this intention that the UIM insurer must possess a viable subrogation claim and intend to pursue it at the time it fronts, and that's just not Alabama law. I mean, turning briefly to the abuse of process claim, longstanding Alabama law has required some actual court filing. This court's 1983 Ramsey versus Leith opinion applying Alabama law has said basically the same thing. I think the example this court gave was a writ of garnishment, and there's no dispute that there's nothing alleged to suggest that State Farm instituted or participated in any legal proceeding against Ms. Smith. In fact, just the opposite. They use the term front and forget in their complaint to describe State Farm's conduct, that basically State Farm fronts and then walks away and does nothing else, which brings us to the court's inquiry in the Haygood opinion, and of course the Haygood opinion, the Supreme Court did kind of clarify the difference between a malicious prosecution claim on the one hand and abuse of process on the other hand, and made clear that there is, in abuse of process law, there does have to be some subsequent, after a properly instituted action, some subsequent use of the court process, and of course that did not happen here and none is alleged, quite frankly. Your Honor, the district court cited to several northern district Alabama cases where abuse of process claims were dismissed under similar facts, and by that I mean in terms of the timing and the absence of some improper use of process. So Your Honor, I think there's an abundance of law to suggest that Ms. Smith's claims against State Farm fail and were properly dismissed, and just as a reminder, and I think Judge Boggs, I think you picked up on this, I mean State Farm did not cause this accident and certainly did not choose Ms. Smith's liability limits, as the district court noted, and frankly is not the proximate cause of her damages, and we submit that the claims against State Farm were properly dismissed and ask this court to affirm. I would be happy to answer any questions from members of the panel. Hear none. Thank you, counsel. Ms. Smith. Good morning. May it please the court, I represent Nationwide General Insurance in this matter. So the claim against Nationwide is failure to settle, negligent or wanton failure to settle. An essential element of that claim is that the insurer decided not to settle within the opportunity to do so. The complaint in this case negates the existence of that element of a claim. It alleges specifically that Nationwide agreed to settle. So your argument is the radical proposition that you can't have a failure to settle claim unless there's a failure to settle. Yes, sir. Insofar as this idea that the insurer has a duty to do something more, that Nationwide should have gone back to the plaintiff and asked the plaintiff to agree not to pursue Ms. Smith for more than the combined limits of the insurance, there's no court that's ever held that. Number one, if it was in fact the standard in the industry, you would think that it would have been addressed somewhere. Alabama courts have never suggested that an insurer can fulfill its duty to its insured by entering into a settlement that doesn't release the insured from all liability, that it leaves them exposed to additional liability. Other courts have held that those kinds of settlements expose the insurer to liability for failure to settle. But maybe most importantly in all of this, there is no allegation, no factual allegation in the complaint to show that a settlement on that basis was available. They don't allege that Mr. Voss ever suggested a settlement on that basis. They don't allege that he would have accepted a settlement on that basis. And they don't even allege that Ms. Smith would have been amenable to a settlement that did not release her from all additional liability. So long and short, under Twombly, they have not alleged facts to show a plausible claim. If the court has no questions, I will sit down. We don't. Thank you. Mr. Raleigh, five minutes. Thank you. Your Honor. Just a point of order, Judge Boggs. The excess verdict was a $1.9 million verdict. Okay. Where did I get that? So I'd like the court to entertain and examine. I thought it was 1.775. That's the set off from the 25 and the minus, Your Honor. I got it. So that's not much she's left with. Okay. My fault.     that we're going to go through in this case. Mr. Prosser and Keaton, one of the examples that they give is not only the execution scenario, but a situation where somebody filed for medical malpractice action and doesn't hire any experts, doesn't do anything just to extort a settlement. And I think Prosser and Keaton said that's kind of a reach, but it was decided in that case. But what if I were to file a suit against Judge Rosenbaum? Okay. Hope not. Not for anything here. That's never good advocacy. I heard that in the first year of law school. I got you. So why don't you say, what if you were to file a suit against Mr. Falol? Because Judge Rosenbaum seems nice. And she said I should. And Mr. Falol doesn't. I understand. All right. So point being is, is let's say that I file a suit against her and have allegations. And let's say I depose her for not the purpose of probing those allegations, but to smear her for her religious beliefs in a public forum because I'm mad at her for another reason. Okay. And then I dismiss the suit. All right. Or I let the suit expire in lack of prosecution. Would anybody in this courtroom believe that that's not an abusive process? It is pursuing a legitimate claim for an improper reason for a perversion of the reason. And my point is simply this. The prime point of the Alabama Supreme Court is that if, number one, the U.M. statute was designed to protect injured people and to provide a mode of insurance coverage, actually to require it to be offered U.M. coverage, the Lambert decision was decided because there was a dearth of authority and procedures on even whether there was segregation. And so the Alabama Supreme Court's first decision was, is there subrogation in this context? Because usually it has to be contractual or otherwise. And they said yes. They drew from the common law and said yes. So then the next question is, how do we address it? What procedures are we going to use? And so the point was the Alabama Supreme Court was concerned that if we have this release early on, that insurers, U.I.M. insurers, would not be able to protect their subrogation rights and get the money. Okay? It's not just to preserve it, but get the money. And the point being is, is they said, well, look, you have a duty to investigate. You have time. But at some point, you've got to decide whether to front. Now the whole issue about whether insurance coverage comes in the case, that's really dealing with a separate issue dealing with opting out. But this particular issue is, is an insurer should be able to protect, if that's what they're going to do, protect their subrogation interest. Okay? And then they have a good faith duty to do that. They have a duty to investigate, to make sure it's a valid claim, and to go after it. And the point is simply this. If State Farm and all these other auto insurers can just do this at every moment, take the She was protected. But now she's got a $1.7 million judgment against her, plus over $300,000 of interest. That is an abuse of that process. If the process is intended to get subrogation, to get that $100,000 back, why in the world is she damaged for almost 20 times that amount? That is wrong. Because that's the amount of the harm that she did. Well, I understand that, Your Honor. And this is not any different than any other case. It's not State Farm harm. That's the motorist harm. I get that, Your Honor. And the point is simply this. Let's say State Farm's not in this case. Let's say there's no UIM. All right? If Nationwide had decided to roll the dice in this instance, and didn't even tender policy limits, back 50 years, 1950s with the Waters case, that was a tort in Alabama. The Alabama Supreme Court recognizes the common law that an insurer cannot treat people that way. They can't treat their own insurers that way. And if they can't treat their own insurers that way, they certainly shouldn't be able to treat somebody else, a third party, who they have no connection. You know, with respect, Judge Cargill? I don't understand that. If they have somebody they've promised to protect, they owe more of an obligation to someone they haven't contractually promised to protect. May I briefly answer, Your Honor? Yeah. I'd like to hear this. Yes. So you have the undertaking doctrine in Alabama. No. No. No. No. No. No. You said they have more of an obligation to protect someone who's not their insured than they do to protect their insured. That doesn't make sense. Well, Your Honor, my point is simply this. If insurance companies back in the fifties could litigate these cases against their own insured, why is it not foreseeable? Under the Alabama undertaking law, if you undertake to do something and it's foreseeable that you're going to hurt somebody else, that is a tort. And we have an analogous situation with the business relations tort as well. We got that. Thank you, Counsel. Your Honor, we'll take it under submission.